# Exhibit 11

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

HALLMARK LICENSING, LLC and
HALLMARK MARKETING COMPANY, LLC    Case No: 17-cv-02149 (LDW) (AYS)

           Plaintiffs,

- against -

DICKENS INC.,

           Defendant.    **PLAINTIFFS' RESPONSES & OBJECTIONS TO DICKENS' FIRST SET OF DOCUMENT REQUESTS**

------------------------------------------------------------X

DICKENS INC.,

           Third-Party Plaintiff,

- against -

RONALD PARODI, MICHAEL ALLEGRA,
JOSEPH ALLEGRA, and STERLING CARD &
GIFT SHOP, INC.,

           Third-Party Defendants.
------------------------------------------------------------X

Plaintiffs Hallmark Licensing, LLC and Hallmark Marketing Company LLC (collectively, "Hallmark") by and through their counsel, Fox Rothschild LLP, hereby respond and object to Defendant/Third-Party Plaintiff Dickens, Inc. ("Dickens")'s First Set of Requests for the Production of Documents (the "Requests") as follows:

**OBJECTIONS**

1. Hallmark objects to the Requests to the extent they seek information that is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, exemption, and/or immunity, on the basis that such documents and/or information are not discoverable. Any inadvertent disclosure or production of any information that is protected from disclosure by the attorney-client privilege, work-product doctrine, or any

other privilege, doctrine, exemption, and/or immunity shall not constitute a waiver of any such privilege, doctrine, exemption and/or immunity or any other ground for objecting to discovery of any such documents and/or information.

2. Hallmark objects to the Requests to the extent they seek documents previously produced to Dickens.

3. Hallmark incorporates the foregoing General Objections into each of the following responses, which responses are expressly made subject to the foregoing General Objections.

## RESPONSES AND OBJECTIONS OF HALLMARK TO DICKENS' REQUESTS

1. All documents, communications, photographs, or films that concern, in any way, a visit made to Dickens by Ronald Parodi and/or Michel Allegra and/or Joseph Allegra on or about March 29, 2017, whether such documents, communications, photographs, or films were made before, during or after, such visit.

**Response:**

Hallmark objects to the Request to the extent that it seeks privileged communications between Ronald Parodi, an employee of Hallmark, and Hallmark's counsel. Notwithstanding the foregoing objections, Hallmark has already produced all responsive, non-privileged documents in its possession.

2. All records in Hallmark's actual or constructive possession of sales of Hallmark products to Dickens from January 1, 1990 to date, regardless of whether such record was created by Hallmark.

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, and irrelevant, as it seeks documents for a 27-year period, from 1990 to the present. Hallmark further objects to this

Request because it seeks documents already in the possession, custody and/or control of Dickens. Notwithstanding the foregoing objections, Hallmark will supplement its initial productions with non-privileged documents that are responsive to this Request.

3. Copies of any press releases issued by or on behalf of Hallmark relating to Hallmark's instant lawsuit against Dickens.

**Response:**

None.

4. Copies of all communications between Hallmark and "The Kansas City Star" in April 2017, that mention Dickens and/or "James Chou."

**Response:**

None.

5. Copies of all communications related to Hallmark's instant lawsuit against Dickens by and between the Fox Rothschild law firm and any employee or agent of the website "LAW360" (www.law360.com).

**Response:**

None.

6. Copies of all communications related to Hallmark's instant lawsuit against Dickens by and between the Fox Rothschild law firm and the website "Above the law" (http://abovethelaw.com).

**Response:**

None.

7. With regard to a lawsuit filed against Hallmark by Blue Mountain Arts/Hartford House Ltd. (Case No. 3:88-mc-00676) in federal district court in Colorado in or about 1988 for copyright infringement and/or other claims, please provide (a) records pertaining to any

3

investigation undertaken at Hallmark's request or direction of Dickens' or James Chou's involvement in the litigation; and (2) any document reflecting the settlement between Hallmark and Blue Mountain Arts.

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, confusing and irrelevant. First, the Request refers to a lawsuit filed against Hallmark by Blue Mountain Arts/Hartford House Ltd; however, the civil action number cited refers to a case captioned *Carl Townes v. Continental Airlines,* 88-cv-00676 (D. Co. 1988). Second, Hallmark further objects to this Request as ambiguous since the civil action miscited by both title and case number is actually a reported decision involving different parties, issues, and defenses than are present at bar, which was filed in 1986 under the caption, *Hartford House Ltd., et al. v. Hallmark Cards Incorporated, et al.,* 86-C-1458, and is therefore 31 years old. The Request is further objectionable because it seeks irrelevant information, including a settlement agreement respecting unrelated litigation which contains a confidentiality provision. As a further supplement to this response, Hallmark refers Dickens to the Colorado court's docket for information it seeks.

8.  Provide any documents relating to Hallmark's request, made in an April 15, 1991 letter from Hallmark's Assistant General Counsel Barry Katz, that James Chou substantiate his claim that "certain of [Dickens'] products outsell Hallmark brand greeting cards."

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, and irrelevant, as it seeks documents from 26 years ago. Notwithstanding the foregoing objections, Hallmark has been unable to locate any documents in its possession, custody, or control that are responsive to this Request.

4

9. Provide documents that in any way concern or address James Chou's May 10, 1993 letter to Don Hall concerning Dickens' development or sale of electronic greeting cards and/or Hallmark's trade restriction.

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, and irrelevant, as it seeks documents from 24 years ago. Notwithstanding the foregoing objections, Hallmark has been unable to locate any documents in its possession, custody, or control that are responsive to this Request.

10. Provide copies of any communications between Hallmark and Popwin Giftware Manufacturing Co., Ltd. ("Popwin"), during 1995-1996, pertaining to orders placed by Hallmark with Popwin, including but not limited to any communications in which Hallmark sought Popwin's agreement to cease or limit its business with Dickens.

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, and irrelevant, as it seeks documents from 22 years ago. Notwithstanding the foregoing objections, Hallmark has been unable to locate any documents in its possession, custody, or control that are responsive to this Request.

11. Provide copies of any documents reflecting an investigation from Hallmark in or about 1997 pertaining to Dickens' sale of Hallmark cards in Dickens' Jericho, New York store for 29 cents apiece.

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, and irrelevant, as it seeks documents from 20 years ago. Notwithstanding the foregoing objections, Hallmark has

been unable to locate any documents in its possession, custody, or control that are responsive to this Request.

13. Provide all documents in your actual or constructive possession reflecting the last five shipments of Hallmark products from NorthStar Pulp and Paper Co., Inc. ("NorthStar"), to Roger Slate or CMC Sales.

**Response:**

Any documents responsive to this Request were produced to Hallmark pursuant to subpoenas it served upon non-parties, Northstar Pulp & Paper Company, Inc. and Square Peg Logistics LLC. Such documents were previously produced to Dickens on two occasions. In addition, Hallmark will produce two Square Peg Logistics LLC checks payable to CMC Sales for $10,000 each, which Square Peg recently produced as a follow up to discovery Square Peg represented it would produce at its 30(b)(6) deposition.

13. Provide copies of any documents in Hallmark's actual or constructive possession, from 1990 to the present, mentioning James Chou or Dickens.

**Response:**

Hallmark objects to this Request as overly broad, unduly burdensome, and irrelevant, as it seeks documents for a 27-year period, from 1990 to present. Notwithstanding the foregoing objections, Hallmark will supplement its initial productions with non-privileged documents that are responsive to this Request.

14. Provide copies of any documents reflecting Hallmark's belief or knowledge, before March 2017, that NorthStar had sold Hallmark products for purposes other than their destruction.

**Response:**

None.

6

Dated: November 15, 2017

## FOX ROTHSCHILD LLP

By: <u>/s/ George Krueger</u>
George Krueger, Esq. (admitted *pro hac vice*)
Brian Berkley, Esq. (admitted *pro hac vice*)
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215)-299-2000

Alexandra L. Sobol, Esq.
101 Park Avenue, 17th Floor
New York, NY 10178
Telephone: (212) 878-7900
Facsimile: (212) 692-0940

*Attorneys for Plaintiffs Hallmark Licensing, LLC and Hallmark Marketing Company, LLC*