UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
HALLMARK LICENSING LLC,
HALLMARK MARKETING COMPANY
LLC,

                     Plaintiffs,


-against-

                                      **MEMORANDUM & ORDER**
                                      17-CV-2149 (SJF)(AYS)


DICKENS INC.,


                     Defendant.
--------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiff Hallmark Licensing LLC, Hallmark Marketing Company LLC

("Hallmark" or "Plaintiff") commenced this action against Dickens Inc. ("Dickens" or

"Defendant") alleging that Dickens violated its trademark and other rights by selling

Hallmark branded greeting cards that Dickens had purchased from a company, Square

Peg Logistics, LLC ("Square Peg'), which, in turn, had purchased from Northstar Pulp &

Paper Company, Inc. ("Northstar"). Northstar had purchased the cards directly from

Hallmark, which alleges it had transferred the cards to Northstar from Hallmark's

Enfield, Connecticut distribution center, to be recycled. Dickens maintains that under the

"First Sale" doctrine, Hallmark's trademark rights were extinguished when it sold the

cards to Northstar.

      Currently before the Court are the parties' cross-motions to compel discovery.

Docket Entry ("DE") [61], [62].

I.      Legal Standard

        In general, a party may obtain discovery of any non-privileged matter that is

relevant to a claim or defense of any party and proportional to the needs of the case.  FED.

R. CIV. P. 26(b)(1).  Nonetheless, a court has discretion to circumscribe discovery even of

relevant evidence by making any order which justice requires "to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense."  FED.

R. CIV. P. 26(c)(1); see Herbert v. Lando, 441 U.S. 153, 177 (1979).

II.     The Motions

        A.      Defendant's Motion to Compel

        Defendant seeks to compel nine separate categories of discovery from Plaintiff.

The Court addresses each in turn.

                i.      Privileged Communications

        Defendant seeks discovery it alleges is wrongly marked "privileged" on

Hallmark's privilege log. Specifically documents 24 and 35-48.  DE [61] at 2-3.[1] Plaintiff

argues that the attorney-client privilege covers the communications Defendant seeks, as

the 14 emails at issue were sent to or from Barry Katz ("Katz"), Associate General

Counsel at Hallmark Cards, Inc., for the purpose of facilitating the provision of legal

advice to Hallmark. Plaintiff further asserts that Defendant has failed to set forth any

evidence that Plaintiff has waived the privilege. This Court agrees. A review of the

exhibits, arguments, and the law, reveals that the communications in question are

properly designated as attorney-client privileged and not subject to any of the exceptions

_____

1. For ease of reference, page references to documents appearing on the docket herein are
those assigned to the document as electronically filed.

and/or waivers set forth by the Defendant. Accordingly, Defendant's motion to compel these documents is denied.

ii.     <u>Further Deposition of Ronald Parodi</u>

Defendant seeks an order requiring the re-deposition of Ronald Parodi ("Parodi"), a Hallmark sales manager for the Northeast region. Dickens argues that when Parodi was asked questions regarding a telephone call he received from Hallmark in-house counsel Katz's office around the time of Parodi's entry onto the Dickens' premises. When Dickens' counsel asked Parodi to recall what was said during the conversation, his counsel objected, citing privilege. Dickens' counsel asked Parodi if he asked anybody for legal advice during the conversation, Parodi replied, "I wouldn't call any of that legal advice. At this point in time this was just a conversation – there were conversations." Parodi Deposition Tr. 87:15-17, DE [61-6] at 9.

Hallmark argues that Dickens waived any right to challenge the privilege assertions during the deposition when counsel failed to address deposition issues with Chambers at the time of the deposition as instructed by this Court during a prior ruling. Hallmark also argues that the privilege assertion was proper, and that Katz was acting in a legal capacity during the call and that Hallmark never waived the privilege. Hallmark argues that the privilege associated with Katz's investigation belongs to the client, Hallmark. Therefore, Parodi's belief as to whether information he provided to Katz was privileged is irrelevant, as he was not the client represented by Katz, Hallmark was.

First, Hallmark is correct that any deposition issues should be addressed with Chambers at the time of the deposition to the extent possible. However, the Court holds that regardless of any failure to follow judicial directions, the communications between

Parodi and Katz are attorney-client privileged, as Hallmark is the client and therefore the holder of the privilege. As Hallmark has never waived its privilege, the communications between Parodi and Katz are attorney-client privileged. Thus, Dickens' motion to re-depose Parodi is denied.

### iii.    Responses to Dickens' First Set of Document Requests

Dickens seeks responses to two document requests from its First Set of Document Requests. Specifically, Document Request No. 2 seeking "[a]ll records in Hallmark's actual or constructive possession of sales of Hallmark products to Dickens from January 1, 1990 to date, regardless of whether such record was created by Hallmark," and Document Request No. 13 seeking "copies of any documents in Hallmark's actual or constructive possession, from 1990 to the present, mentioning James Chou or Dickens." DE [61] at 11-12. Defendant asserts that to date, Plaintiff has provided no responsive documents to either request and seeks an order from this Court directing Hallmark to affirm the non-existence of such records as well as whether to the best of their knowledge at one time such records existed and, if so, why they no longer no exist.

Plaintiff argues that it has conducted a thorough search dating back to 1990 and has produced all responsive documents.

As a court cannot direct production of that which does not exist, Plaintiff is directed to provide a sworn interrogatory in response to both document requests describing the searches conducted and setting forth that all responsive documents from the described searches have been produced.

### iv.    Responses to Dickens' Second Set of Document Requests

Request No. 1 of Dickens' Second Set of Document Requests seeks "[c]opies of

all the invoices listed in HALLMARK0001019 sales report." DE [61] at 13. Dickens argues that two columns in the sales report, namely the "product type description" and "format" columns" contain ambiguous and generalized statements of the products sold. Dickens asserts that the best evidence of what was in fact sold are the invoices themselves.

Hallmark objects on the grounds of burden and relevance. First Hallmark argues that the sales report provided is a business record compilation showing all the information that can be found on each invoice. Hallmark further argues that while Dickens asserts that some column headings are ambiguous and contain generalized statements of the products sold, they provide no explanation of how the columns are generalized or ambiguous.

As Defendant has failed to articulate a reason as to why the column headings are inadequate, at this time the Court sees no reason to direct the production of the invoices. However, in an effort to move discovery along in an efficient manner, Dickens is directed to select three sample invoices from the sales report for review. Hallmark is directed to produce the three sample invoices forthwith. Dickens shall have one week to review the sample invoices and if the information on the invoices materially differs from the information provided in the sales report, then counsel may renew this request within that one-week period.

v.    <u>Responses to Dickens' Third Set of Document Requests</u>

Dickens' Discovery Request No. 2 seeks a "[c]opy of all documents that relate to or refer to any communication between Hallmark and Allegra brothers, including but not limited to the payment from Hallmark to Joseph Allegra, Michael Allegra or Sterling."

DE [61 at 15. To the extent that any outstanding supplemental discovery regarding this request has yet to be produced, Hallmark is directed to do so forthwith. If Hallmark has produced all discovery in its possession relevant to this request, then Hallmark is directed to provide a sworn interrogatory stating such.

Dickens' Discovery Request No. 8 seeks a "[c]opy of all documents that relate to or refer to the competition, comparison of sales, marketing between Hallmark and Dickens's major supplier American Greetings since January 1, 2016 to the present." De [61] at 15. Dickens argues that: (1) it is asking for the same information that Hallmark requests of it; and (2) it bears relevance to Hallmark's motive in pursuing this lawsuit to help establish that "Hallmark, at least in part, is motivated in this litigation by a desire, for competitive reasons, to hurt Dickens and its major supplier American Greetings." Id. at 16-18.

Hallmark argues that the request is disproportionate to the needs of the case and seeks information that has no bearing on any of the claims or defenses in this case. This Court agrees.

First, as noted by the Plaintiff, the claims in this case are not symmetrical. Hallmark alleges that Dickens sought to sell Hallmark's trademarked goods at wholesale prices below the price charged by Hallmark and that Dickens conducted these sales without any regard to the customary sales restrictions. See Compl. ¶¶ 33, 45.  Dickens' counterclaim alleges trespass. Just as Hallmark is entitled to the discovery to support the elements of its claims, Dickens is similarly entitled to discovery to support the elements of its claims. However, Dickens' stated basis of asking for the same information that Hallmark requests of it is in no way relevant, proper nor proportional to the needs of this

case.

Next, Hallmark's motive for bringing the instant action is of no relevance to Dickens' own claim or defenses. As the Court has already noted, Dickens claim of trespass does not provide a basis for the requested discovery. Further, a review of the affirmative defenses pleaded by Dickens again do not allege or place Hallmark's intent at issue. Therefore, this discovery request is denied as irrelevant and disproportional to the needs of this case.

vi.    <u>Documents Requested During the Depositions of the Allegras</u> [2]

During and following the April 16, 2018 depositions of Michael and Joseph Allegra, Dickens requested various documents including the retainer agreement and other documents relating to the relationship between Michael and Joseph Allegra and their attorney, as well as documents between the Allegras and Hallmark concerning the March 29, 2017 entry onto Dickens premises, along with a request to inspect the 300 cards purchased by the Allegras during the March 29, 2017 visit. After email exchanges, counsel agreed to provide the Allegra's retainer agreement and other documents relating to the Allegras' reimbursement for the cards purchased on March 29, 2017. Dickens avers that to date Hallmark has failed to actually produce the promised documents.

With respect to the 300 cards purchased on March 29, 2017, Hallmark claims it does not have physical possession of them and although it has made efforts to locate

---

2. It is the Court's understanding that since the June 29, 2018 filing of Dickens' motion to compel, Hallmark has provided Defendant with the discovery listed as the sixth category of documents in dispute in Dickens' motion. Therefore, the Court will skip this dispute and forges forward to Dickens' seventh discovery dispute, which appears in this Order as Dickens' sixth discovery dispute.

them, has had no luck. Dickens seeks an order directing production of all the documents or in the event that the 300 cards cannot be produced, an affidavit explaining why. This Court agrees.

Hallmark is directed to produce the promised documents forthwith. With regard to the 300 cards, if Plaintiff is still unable to locate them, they are directed to provide an affidavit stating such and setting forth the efforts undertaken to locate them.

vii.     <u>Responses to Dickens' First Set of Interrogatories</u>

Dickens seeks complete responses to its First Set of Interrogatories, specifically (1) whether Hallmark has sold any counter cards at closeout bearing the Hallmark designation during the indicated period of time, and (2) whether on or after Hallmark transferred to Northstar greeting cards bearing particular identifying item numbers, did Hallmark continue selling those greeting cards.

In response to the first interrogatory at issue, Hallmark stated that, "Except for boxed cards, Hallmark does not sell greeting cards at closeout." DE [61] at 22. After a meet and confer, Hallmark went on to clarify its response stating that. "Hallmark does not sell counter cards bearing the Hallmark trademark via its closeout broker," and that "Image Arts cards" do not bear the Hallmark trademark.

With respect to the second interrogatory at issue, Hallmark responded, "No, Hallmark could not continue selling 'those same greeting cards'; it made the decision not to sell those cards and decided instead to send them to Northstar for destruction." DE [61] at 22

After reading the instant motion as well as the interrogatories themselves, this Court notes that both interrogatories are poorly worded if intended to elicit the

information sought. Therefore, Hallmark properly responded to both interrogatories as written. Dickens may seek clarification or further answers to any interrogatories during depositions.

viii.     The Deposition of Jennifer Seyller

Dickens seeks the deposition of Jennifer Seyller ("Ms. Seyller"), Hallmark's Vice-President for Retail Product Development, to testify regarding Hallmark's claims. Hallmark objects on several grounds inter alia that the deposition is not proportional to the needs of the case and that the deposition seeks testimony from an "Apex" witness. Hallmark asserts that at least three other witnesses – Barry Katz, Hallmark's Associate General counsel, John Chase, Vice President of Sales, and Ron Parodi, Regional Sales Manager for the Northeast – have knowledge of the same facts of which Ms. Seyller may have knowledge and will all be made available to testify.

"Highly-placed executives are not immune from discovery." Consolidated Rail Corp. v. Primary Indus. Corp., 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993); General Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (citing Kuwait Airways Corp. v. American Sec. Bank, N.A., 1987 WL 11994, at *4 (D.D.C. May 26, 1987) ("[H]igh ranking corporate executives are not automatically given special treatment which excuses them from being deposed.")). Holding otherwise would contravene the principle of broadly available discovery. See Chevron Corp. v. Donziger, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("[S]enior executive are not exempt from deposition, and because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony only in compelling circumstances." (citations omitted)); Fed. R. Civ. P.

26(b)(1).

When considering whether to allow the deposition of a corporate executive, the Court must "begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge." In re Garlock, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006). The Court considers the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business. See Treppel v. Biovail Corp., 2006 WL 468314, at *1–2 (S.D.N.Y. Feb. 28, 2006); General Star Indem., 210 F.R.D. at 83. See, e.g., Chevron Corp., 2013 WL 1896932, at *1(allowing the defendant's deposition of the plaintiff's CEO despite harassment concerns because there was "little doubt that [the CEO] has relevant knowledge," even if his knowledge was not necessarily unique).

In light of these considerations, "[c]ourts have recognized an additional layer of protection for senior corporate executives subject to depositions." Alex & Ani, Inc. v. MOA Intern. Corp., 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011). The principle behind this protective measure is Rule 26(b)(2), which limits discovery that is unreasonably cumulative or is obtainable from a "more convenient, less burdensome, or less expensive" source. Fed. R. Civ. P. 26(b)(2). See, e.g., General Star Indem. Co., 210 F.R.D. at 82–83 (noting that courts have granted protective orders for executives where the party seeking the deposition has "not yet attempted to obtain information from lower level executives," where "high-level executives plainly had no knowledge of the facts," and "where the deposition was solely sought to harass the executive" (citations omitted)); Consolidated Rail Corp., 1993 WL 364471, at *1 (noting that unless the

"highly-placed executive" has some unique knowledge, "it may be appropriate to preclude a redundant deposition" of that official); the mere "fact that the [executive] has a busy schedule" or claims no unique knowledge of relevant facts, however, "is simply not a basis for foreclosing otherwise proper discovery." Id. (quoting CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y.1984)). Where an executive makes such claims, the claim "is subject to testing by the examining party." Consolidated Rail Corp., 1993 WL 364471 at *1; Chevron Corp., 2013 WL 1896932 at *1. See also Less v. Taber Instrument Corp., 53 F.R.D. 645, 647 (W.D.N.Y. 1971) ("A claim that [the executive] has no knowledge of any relevant facts should not be allowed to prevent his examination, since plaintiff is entitled to test his lack of knowledge. Likewise, the fact that [he] is a very busy executive should not bar his examination." (citations omitted)).

Dickens has established that Ms. Seyller's testimony is relevant to Hallmark's claims in this action given her position in the company. However, the issue is whether Ms. Seyller has unique personal knowledge to warrant her examination. Dickens points broadly to Ms. Seyller's role in the organization but does not provide a basis for why she may have unique knowledge. Further, Dickens even states that some of Ms. Seyller's subordinates have been or will be deposed in this case. The areas Dickens cites as deposition topics for Ms. Seyller are easily areas that her subordinates have the same knowledge of. Additionally, some of the information sought will be addressed during the 30(b)(6) deposition, with a deponent who has the best knowledge. Dickens does not show Ms. Seyller having unique knowledge about the areas cited. Accordingly, at this time, Dickens' motion to compel the deposition of Ms. Seyller's is denied.

B.     Plaintiff's Motion to Compel

Hallmark seeks to compel six separate categories of discovery from Defendant. The Court, again, addresses each in turn.

i.     Production of Documents Relating to "Red Flags"

Dickens asserts as affirmative defenses that it is a "bona fide purchaser of the goods in question" and that Hallmarks' claims are "barred by the applicable provisions of the Uniform Commercial Code" ("UCC").  See Am. Ans. ¶¶ 75-76, DE [31]. Because of these affirmative defenses, Hallmark seeks documents reflecting the prices paid by Dickens and the restrictions imposed by sellers on the resale of the cards Dickens purchased from them in order to evaluate whether given Dickens' knowledge of the practices of trade, Dickens met the heightened standard of commercial reasonableness when it purchased Hallmark products from Square Peg. DE [62] at 5.

Dickens argues that the requests are overbroad and seek "trade secrets" and will only produce responsive information if the documents are marked "attorneys' eyes only." DE [64].

A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential." Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 391 (2d Cir. 1981); AMW Materials Testing, Inc. v. Town of Babylon, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) ("While the Federal Rules mandate a liberal standard, district courts are empowered to issue protective orders to temper the scope of discovery under [Rule 26(c)].") Federal Rule of Civil Procedure 26(c) provides the relevant standard for moving to implement a protective order. Specifically, Rule 26(c) provides as follows:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c). Rule 26(c) thus provides a demonstrative, non-exhaustive list of situations constituting "good cause" warranting entry of a protective order in specific litigation. Under Rule 26(c), the moving party must establish "particular and specific facts" rather than "conclusory assertions," that justify the imposition of a protective order. Rofail v. United States, 227 F.R.D. 53, 54-55 (E.D.N.Y. 2005) (quoting AMW

Materials, 215 F.R.D. at 72); <u>see also</u> <u>Bank of N.Y. v. Meridien BIAO Bank Tanzania</u> <u>Ltd.</u>, 171 F.R.D. 135, 143 (S.D.N.Y. 1997) ("Under Rule 26(c), the moving party is required to establish good cause by a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (citations and quotations omitted)). "[I]f the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." <u>Hasbrouck v. BankAmerica Hous.</u> <u>Servs.</u>, 187 F.R.D. 453, 455 (N.D.N.Y. 1999) (collecting cases).

A district court also retains the power to modify a protective order. <u>See</u> <u>United</u> <u>Nuclear Corp. v. Cranford Ins. Co.</u>, 905 F.2d 1424, 1427 (10th Cir. 1990), <u>cert.</u> <u>denied</u>, 498 U.S. 1073 (1991) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."). A party seeking modification of a pre-existing, stipulated protective order must meet a higher standard, however. See <u>Geller v. Branic Int'l Realty Corp.</u>, 212 F.3d 734, 738 (2d Cir. 2000) ("Although a district court has power to modify a protective order, <u>see</u> <u>In re 'Agent Orange' Prod. Liability Litig.</u>, 821 F.2d 139, 145 (2d Cir. 1987), the required showing must be more substantial than the good cause needed to obtain a sealing order in the first instance.").

After careful review of the parties' arguments, as well as the Confidentiality Agreement stipulated to by the parties, the Court concludes that the requested documents are not trade secrets and that an attorneys' eyes only designation is not warranted.

With respect to Dickens' contention that requested information seeks trade secrets

or highly confidential information, Dickens has not met its burden of demonstrating that the material it wishes to preclude non-attorneys from viewing contains trade secrets. In determining whether information qualifies as a trade secret, New York courts have considered the following factors:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Ashland Management Inc. v. Janien, 624 N.E.2d 1007, 1013 (N.Y. 1993) (quoting Restatement of Torts § 757 cmt. b) (internal quotation marks and brackets omitted).

Much of Defendant's submission contains conclusory statements that the requested information contains trade secrets and would cause Dickens' supplier irreparable harm if disclosed. This is insufficient. Furthermore, the Defendant has not provided sufficient information to support its assertion regarding trade secrets. Although Defendant asserted that "Dickens does not voluntarily relinquish this information to anyone," Defendant has failed to provide any specific, non-conclusory information regarding the extent of measures taken by the business to guard the secrecy of such information, the value of the information to the business and the ease or difficulty with which the information could be acquired or duplicated by others. In any event, to the extent that such information could constitute a trade secret, Hallmark has agreed that

Defendant may redact such portions.[3] DE [64] at 4.

With regard to the attorneys' eyes only issue, the Court first notes that that the Confidentiality Agreement in this matter was agreed to by the parties, and "So Ordered" by this Court. See DE [47] and [48]. Further, the parties themselves specifically negotiated about and agreed to the addition of two categories of individuals to whom "confidential" information may be disclosed, before submitting the Confidentiality Agreement to this Court to be So Ordered. See DE [47]. The fact that the Confidentiality Agreement was drafted and stipulated to by the parties weighs against Dickens' urging that any material be designated attorneys' eyes only. See Bayer, 162 F.R.D. at 466 n.15; see also Am. Tel. & Tel. Co. v. Grady, 594 F.2d 594, 597 (7th Cir. 1978) ("[W]here a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order."); Omega Homes, Inc. v. Citicorp Acceptance Co., 656 F. Supp. 393, 404 (W.D. Va. 1987) (stating that when "the proposed modification affects a protective order stipulated to by the parties, as opposed to one imposed by the court, it is clear that the shared and explicit assumption that discovery was for the purposes of one case alone goes a long way toward denying the movant's request without more." (citing GAF Corp. v. Eastman Kodak Co., 415 F. Supp. 129, 132 (S.D.N.Y. 1976))). Thus, this factor weighs in favor of Hallmark.

This point warrants further emphasis. At the time that the parties entered into the agreement, the parties, including Dickens, were aware of the nature of the claims and

---

3. In Plaintiff's June 5, 2018 letter to counsel, Hallmark states that it "would be amenable to Dickens producing a redacted version of the contract which only shows any restrictions imposed on Dickens and the requested pricing information. See DE [62-11] at 7. Dickens declined such an offer. See DE [62] at p. 7 n. 6.

defenses in this case. The parties were both aware that there was no attorney' eyes only category designated under confidential information, yet still consented to such an agreement. "[A] party's oversight in not negotiating a provision in a protective order concerning a matter which should have been reasonably foreseeable at the time of the agreement has been held to not [warrant] relief from the protective order." <u>Jochims v. Isuzu</u>, 145 F.R.D. 499, 502 (S.D. Iowa 1992). Accordingly, this factor weighs against modification.

In sum, Dickens has not demonstrated the existence of trade secrets or the need to designate the requested information as attorneys' eyes only. As Plaintiff has already expressed its willingness to negotiate compromise between the parties regarding any truly proprietary information, specifically that Defendant be allowed to redact such information, the court encourages the parties to confer regarding the compromise and continue to work together to determine which documents would need to be redacted under this standard. Accordingly, Plaintiff's motion to compel the requested information is granted, subject to the parameters proposed by Plaintiff in its June 5, 2018 letter.

ii.    <u>Documents Containing Customer Complaints</u>

Hallmark requests document concerning any communication, including customer complaints, Dickens received from customers in connection with the Hallmark products. Hallmark seeks such documents for evidence of customer confusion. Hallmark argues that during deposition, Mr. Rhee, a Dickens employee, testified he received email communications from customers, including complaints, but that he was never asked to search his email for such communications in connection with this litigation nor was he aware of such a search. <u>See</u> DE [62] at 9.

Dickens opposes this request by asserting that Mr. Rhee's further testimony indicates that the communications were mostly oral. <u>See</u> DE [64] at 9.

As the requested discovery is relevant, if Dickens has not already done so, Dickens is directed to search for and produce communications with third-parties, including customers, and related internal Dickens communications that reference the Hallmark products forthwith. If Dickens has already done so and no such documents exist, or Dickens has already produced all existing documents, Dickens is directed to provide an affidavit stating such and setting forth the efforts and searches undertaken to locate the requested documents.

      iii.    <u>Documents Relating to Date Hallmark Products Were Shipped</u>

Hallmark seeks documents that reflect the date that Dickens shipped and delivered Hallmark products to its customers sold before the April 10, 2017 agreement between the parties. As Dickens' response to the instant motion indicates that it is no longer objecting to this request and has provided Hallmark a spreadsheet with the "Tracking Numbers" and "Date Shipped" for all shipments of the Hallmark products purchased by Dickens from Square Peg and delivered to Dickens' customers by UPS and Federal Express, this issue appears to be resolved, and thus, is moot. <u>See</u> DE [64] at 11.

      iv.    <u>Dickens' Communications with Third Parties Concerning the Litigation</u>

Hallmark seeks Dickens' communications with third parties concerning this litigation, namely: (1) documents that relate or refer to any communications Dickens had in connection with this litigation; (2) documents constituting or reflecting communications between Dickens and the Greeting Card Association ("GCA") and its

members, including its current and/or former Presidents and Board members with respect to the Hallmark v. Dickens Litigation; and (3) documents constituting or reflecting communications between Dickens and small greeting card publishers reflecting Dickens' effort to set its booth up near the Hallmark booth at the January, 2017 Atlanta Gifts Show. See DE [62] at 12-13. Hallmark argues that the discovery sought is relevant to the claims and defenses in this litigation as well as narrowly tailored.

Dickens avers that the requests are overbroad and not proportional to the needs of this case, although it maintains that it did provide discovery related to the requests. See DE [64] at 12. Dickens' argues that Hallmark is not entitled to "all" communications concerning this litigation, only "relevant" communications. Id.

In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In its current form, Hallmark's first request, namely, documents that relate or refer to any communications Dickens had in connection with this litigation, is overbroad and not proportional to the needs of this case. However, Plaintiff's second and third document requests are both relevant and proportional to the needs of this case.

With respect to Plaintiff's second request, documents constituting or reflecting communications between Dickens and the GCA and its members with respect to the Hallmark v. Dickens Litigation, the request is narrowly tailored in both scope as well as audience. The request seeks information concerning this litigation and is only directed toward the GCA and its members. Hallmark's third request similarly seeks both relevant and sufficiently narrowly tailored information as it requests documents constituting or reflecting communications between Dickens and small greeting card publishers reflecting

Dickens' effort to set its booth up near the Hallmark booth at the January 2017 Atlanta Gifts Show. As Defendant has set forth an allegation in its pleading concerning the 2017 Atlanta Gift Show and Defendant's intent, Plaintiff is entitled to discovery relating to this allegation.

Accordingly, Dickens is directed to search for and produce documents constituting or reflecting communications between Dickens and the GCA and its members, including its current and/or former Presidents and Board members with respect to the Hallmark v. Dickens Litigation and documents constituting or reflecting communications between Dickens and small greeting card publishers reflecting Dickens' effort to set its booth up near the Hallmark booth at the January, 2017 Atlanta Gifts Show forthwith.

v.      Information Concerning Dickens' Profit

On March 13, 2018, Hallmark propounded its Second Set of Interrogatories which, inter alia, sought Dickens' "[t]otal profit percent" earned as a result of its sale of the Hallmark products. DE [62] at 14; see DE [62-5] at 3. Dickens responded to Interrogatory 2(d) stating:

> You may obtain the answer, in part, by performing the appropriate mathematical computation using the "total Sales" and Total cost of goods sold", we do not have information for additional expenses that impact profit, including but not limited to sales costs, rent, transportation, office expenses, etc.

DE [62-25] at 5.

In its opposition to the instant motion, Dickens avers that on November 15, 2017, Hallmark was provided a document titled "Hallmark products inventory etc.", DE [64-14], which includes various columns headings such as "Dickens Gross Sales", "Dickens

Gross Profit" and "Dickens Cost" with the total amounts provided at the bottom of the columns. DE [64] at 13; DE [64-14].

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, "a party may serve on any other party no more than 25 written interrogatories...." Fed. R. Civ. P. 33(a)(1); see Pegoraro v. Marrero 281 F.R.D. 122, 128 (S.D.N.Y. 2012). Interrogatories "may relate to any matter that may be inquired into under Rule 26(b) ... [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact...." Id. 33(a)(2); see Trueman v. New York State Canal Corp., 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) ("Interrogatories, like other discovery devices, may inquire into any discoverable matter, including facts and contentions."). The general aim of this discovery device is to "expeditiously narrow the scope of the litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize expense." Trueman, 2010 WL 681341, at *2. To that end, the responding party is required to answer each interrogatory "separately and fully under oath." Fed. R. Civ. P. 33(b)(3). Thus, the Rule explicitly requires the responding party to "provide the best answer they can based upon information within their possession." Trueman, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 33(b)(3)).

In order to ensure that each interrogatory is answered "separately" and "fully," see Fed. R. Civ. P. 33(b)(3), the responding party is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories...." Upstate Shredding, LLC v. Ne. Ferrous, Inc., 2016 WL 865299, at *8 (N.D.N.Y. Mar. 2, 2016); see Zanowic

v. Reno, 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("In responding

to interrogatories ... a party is under a duty to make a reasonable inquiry concerning the

information sought in the interrogatories, and a party's failure to describe his efforts to

obtain the information sought ... renders his responses insufficient."); Braham v.

Perelmuter, 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016); In re Auction Houses

Antitrust Litig., 196 F.R.D. 444, 445 (S.D.N.Y. 2000) ("A party served

with interrogatories is obliged to respond ... not only by providing the information it has,

but also the information within its control or otherwise obtainable by it."). Where a party,

despite conducting a diligent inquiry, is nevertheless unable to provide a responsive

answer, any efforts utilized should be set forth in detail to ensure a sufficient response is

interposed. Id.; Zanowic, 2000 WL 1376251, at *3 n.1. Further, "an answer to

an interrogatory must be completed within itself and, it should be in a form that may be

used at trial ... [Therefore] [r]eference to depositions, other answers to the interrogatories,

other document production, the complaint itself, or any other documents are improper

and thus unresponsive." Trueman, 2010 WL 681341, at *3; Poulio v. Paul Arpin Van

Lines, Inc., 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) (noting that other courts

have held that a party may not incorporate deposition testimony or rely upon future

depositions in lieu of complete responses to interrogatories); In re Savitt/Adler Litig., 176

F.R.D. 44, 49 (N.D.N.Y. 1997); Davidson v. Goord, 215 F.R.D. 73, 77 (W.D.N.Y. Jan.

30, 2003); Moore Federal Practice §§ 33.101, 33.103, & 33.106. In addition, "as new

information comes into its possession, the responding party has a continuing duty to

supplement their responses." Trueman, 2010 WL 681341, at *2 (citing Fed. R. Civ. P.

26(e)(1)).

It is clear that Dickens' response to Hallmark's Interrogatory 2(d) is improper. While Dickens may at some point during discovery have provided Hallmark a document with relevant figures, Rule 33(b)(3) makes clear that the interrogatory must either be answered "separately and fully in writing under oath" or by specifying the business records that answer the interrogatory consistent with Rule 33(d). To date, Dickens has done neither. If the "Hallmark products inventory etc." document is the business record that Dickens wishes to use to answer the interrogatory then Dickens must do so in the form proscribed by Rule 33. If not, Dickens must fully answer the interrogatory in writing. Regardless, of whether Dickens opts to use business records to answer or not, the answer must be in the form of a sworn interrogatory. Dickens' current response to Interrogatory 2(d) fully fails to comply with Rule 33. Accordingly, Dickens is directed to provide a proper response to Interrogatory 2(d) forthwith.

vi.     Request to Admit

Hallmark objects to Dickens' response to its Request for Admission No. 60. The Request and Dickens' answer is as follows:

REQUEST No. 60

Admit that you suffered no actual damage resulting from the visit of the Dickens' facility by Michael Allegra, Joseph Allegra, and Ron Parodi.

Response: Lack sufficient knowledge or information to admit or deny, pending conclusion of discovery. Hallmark has continuously failed to provide requested discovery, including discovery regarding missing/destroyed photographs, that Dickens requires to admit or deny this request. Additionally, further discovery is contemplated relevant to this question.

DE [62] at 15.

Hallmark argues that Dickens' has repeatedly acknowledged through

23

interrogatory and deposition answers that its claims of trespass seeks only nominal damages in the amount of $1.00. <u>See</u> DE. [62] at 15. Hallmark further argues that additional discovery is not necessary because the incident giving rise to the trespass claim occurred on March 29, 2017 and Dickens has been in sole and exclusive control of the property since the occurrence.

Dickens asserts that at this stage of the litigation they are neither required nor do they choose to concede to a point which they believe warrants further discovery. Dickens also argues that they believe the best evidence of any damage relating to their trespass claim may no longer exist and plan on seeking an appropriate jury instruction at trial.

Rule 36(a) provides, in pertinent part, that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a). The 1970 Advisory Committee notes make clear that "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Advisory Committee Notes to the 1970 Amendment of Rule 36.

Importantly, "Requests for Admissions are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." <u>Henry v. Champlain Enterprises, Inc.</u>, 212 F.R.D. 73, 77 (N.D.N.Y. 2003); <u>see</u> <u>T. Rowe Price Small–Cap Fund, Inc. v. Oppenheimer</u>, 174 F.R.D. 38, 42 (S.D.N.Y. 1997); <u>Pasternak v. Dow Kim</u>, 2011 WL 4552389, at *5 (S.D.N.Y.

Sept. 28, 2011) ("RFAs are not a discovery device at all, since [they] presuppose[ ] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent to concede their genuineness.") (internal quotations and citations omitted) (alterations in original).

Instead, the "Requests and corresponding answers are expeditious, efficient resolutions of factual issues and may, to a considerable degree, when propounded early in the litigation, control the cost of discovery as well. More important, the binding effect of Admissions is intended to lend clarity to the presentation of disputed facts in the litigation." Henry, 212 F.R.D. at 77. Further, the burden rests with the requesting party to ensure that the requests are set forth "simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." Henry, 212 F.R.D. at 77; see Booth Oil Site Admin. Group v. Safety-Kleen Corp., 194 F.R.D. 76, 79 (W.D.N.Y. 2000); Diederich v. Department of the Army, 132 F.R.D. 614, 619 (S.D.N.Y. 1990); T. Rowe Price, 174 F.R.D. at 42. Once propounded, the respondent is required to admit the truth of the request unless there is a disagreement as to its truth. Henry, 212 F.R.D. at 77. In that instance, the party must either deny or object as to the nature of the request and any denial "must be forthright, specific and unconditional." Booth Oil, 194 F.R.D. at 80; see Rule 36(a). Any objection interposed must be directed at and specifically related to a particular request. Henry, 212 F.R.D. at 78. Thus, "[g]eneral objections without any reference to a specific request to admit are meritless." Id. (quoting Diederich, 132 F.R.D. at 616.).

The party opposing a motion to determine sufficiency bears the burden of

persuading the court that its objection is warranted or that its answer is sufficient.

Moore's § 36.12.

> A motion to determine the sufficiency of a response to a request for admission is not to be used as an attempt to litigate the accuracy of a response. Rule 36 does not authorize the court to make determinations on the accuracy of responses before trial. Nor may a court order that the subject matter of a request be admitted because the opposing party's denial is unsupported by evidence.

Id. Fed. R. Civ. P. 37(c)(2) provides that a party who refuses to admit a matter in response to a Rule 36 request can, under certain circumstances, be held liable for expenses incurred by the opposing party in proving that particular matter at trial.

It is not the Court's role at this stage, to resolve this factual dispute. Dickens has denied knowledge or information sufficient to admit or deny the request. Dickens' response is proper. If at trial Hallmark later proves this matter to be true, it may move for appropriate relief pursuant to Rule 37(c)(2). Accordingly, Hallmark's application to compel Dickens' to admit its Request to Admit No. 60 is denied.

CONCLUSION

For the foregoing reasons, Defendant's motion to compel as set forth in Docket Entry [61] is granted in part and denied in part and Plaintiff's motion to compel as set forth in Docket Entry [62] is granted in part and denied in part.


Dated: Central Islip, New York
       December 13, 2018

                                        /s/ Anne Y. Shields_____
                                        ANNE Y. SHIELDS
                                        United States Magistrate Judge