UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HALLMARK LICENSING, LLC and HALLMARK MARKETING COMPANY, LLC<br><br>*Plaintiff/Counterclaim Defendant,*<br><br>vs.<br><br>DICKENS, INC.,<br><br>*Defendant/Counterclaim Plaintiff.*<br>DICKENS, INC..,<br><br>*Third-Party Plaintiff,*<br><br>vs.<br><br>RONALD PARODI, MICHAEL ALLEGRA, JOSEPH ALLEGRA and STERLING CARD & GIFT SHOP, INC.,<br><br>*Third-Party Defendants.* | Civil Action No.: 2:17-cv-02149<br><br>Hon. Sandra J. Feuerstein, U.S.D.J.<br>Hon. Anne Y. Shields, U.S.M.J.<br><br>April 16, 2020 |

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ..........................................................................................................1

ARGUMENT...................................................................................................................1

    1. Dickens has not conceded that the Enterprise Agreement is exclusively a "service contract", precluding a finding, under the Agreement, that Northstar purchased and owned the subject Hallmark Greeting cards pursuant to a "first sale." ............1

    2. Dickens did not "concede[]…the law in the Second Circuit dictates "[i]f the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established" ................4

CERTIFICATE OF SERVICE .......................................................................................8

## TABLES OF AUTHORITIES

**Cases**

*HL. Hayden Co. of New York, Inc. v. Siemens Medical Systems*, Inc.,
   879 F.2d 1005 (2d Cir. 1989) .................................................................................................7

*Ryan v. Volpone Stamp. Co.*,
   107 F.Supp. 2d 369, 382 (SDNY 2000) .................................................................................4,5

This memorandum is respectfully submitted to correct two erroneous arguments Hallmark makes in its "Response to Defendant's Objections to Magistrate's Report and Recommendation" (Doc 142), which materially mischaracterizes Dickens' arguments before Judge Shields and suggests that Dickens now takes contrary and contradictory positions, specifically,

> 1. That Dickens previously conceded that the Enterprise Agreement is purely a "<u>service contract</u>" rather than describing a "<u>purchase</u>" of the subject cards by Northstar from Hallmark, and that, therefore, if the transfer of the subject cards from Hallmark to Northstar was pursuant to the Enterprise Agreement, Dickens tacitly acknowledges that Hallmark is entitled to summary judgment because this "service contract" created a "bailment". Hallmark Memo at 7.
>
> 2. That Dickens "conceded … the law in the Second Circuit dictates '[i]f the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.'" Hallmark Memo at 12 (additional inside quotes and citations omitted).

Neither is true, and Dickens takes this opportunity to correct the record so that its silence is not misconstrued as acquiescence.

1. **<u>Dickens has not conceded that the Enterprise Agreement is exclusively a "service contract", precluding a finding, under the Agreement, that Northstar purchased and owned the subject Hallmark Greeting cards pursuant to a "first sale."</u>**

Hallmark argues that Dickens previously conceded that the Enterprise Agreement was a services contract, and, therefore, if the transaction was pursuant to this agreement then Hallmark did not "sell" the cards and Northstar did not "purchase" them for purposes of the first sale rule, but rather the transfer of the cards created a bailment. Relatedly, HM argues that Dickens should not be permitted to change its theory before this Court. See HM memo at 7:

1

Furthermore, by now characterizing the Enterprise Agreement as a purchase agreement, Dickens contradicts its characterization in its summary judgment briefing submitted to Judge Shields, in which Dickens argued the Enterprise Agreement was a "service contract" but that it did not apply here. Specifically, on page 9 of its Memorandum of Law in Support of Its Motion For Summary Judgment, Dickens argued "the Enterprise Agreement is a service contract that requires Hallmark to pay Northstar in consideration of Northstar's 'recycling' services with respect to the Hallmark products, whereas the Subject Hallmark Greeting Cards were purchased by Northstar from Hallmark – precisely the opposite of the transactions contemplated by the Enterprise Agreement." D.E. 115 at 9. Having lost that battle, Dickens now argues the Enterprise Agreement applies, but not as a service contract as Dickens originally called the agreement, but instead as a purchase agreement. Obj. at 3-4. Dickens cannot have it both ways.

Dickens certainly did argue before Judge Shields, among other things, that the Enterprise Agreement did not control because that agreement called for Hallmark to pay Northstar for Northstar's services, whereas in these transactions Northstar in fact paid Hallmark for the subject cards. However, <u>Dickens also argued in the alternative</u>, as a party of course is permitted to argue, that Hallmark unquestionably "sold" the cards to Northstar even if the transaction were pursuant to the Enterprise Agreement:

> Further, Hallmark asserts that its relationship with Northstar is dictated by the terms of an Enterprise Agreement ("Enterprise Agreement"), entered into in 2012. (Bernstein Dec. ¶ 17, Ex. P). <u>Whether or not Hallmark sold the Subject Hallmark Greeting Cards pursuant to the Enterprise Agreement is of little moment because the evidence remains indisputable that Hallmark sold that inventory to Northstar and this transaction constituted a "first sale" for trademark purposes (as we discuss in the argument section</u>, post.). (emphasis added).

Dickens' Memorandum in Support of Summary Judgment at 8. And, again, at fn 1 of Dickens' reply memorandum before Judge Shields Dickens asserted:

2

> Of course, even if the sale of the Subject Hallmark Greeting cards was within the ambit of the Enterprise Agreement, no different result inures<u>, as Northstar was nonetheless buying the cards from Hallmark</u>.

(emphasis added) And again, at p.10 of Dickens' reply memo we asserted:

> Moreover, as discussed above, <u>the Enterprise Agreement, if applicable, itself provides that transactions executed under its auspices are "purchases,"</u> without any mention of the transactions being "bailments" or "entrustments," ....

(emphasis added). Therefore, Hallmark mischaracterizes the record when it claims that Dickens <u>exclusively</u> argued that the transfer could not be considered a sale by Hallmark and a purchase by Northstar because the Enterprises Agreement is a "services contract." – Rather, Dickens <u>explicitly</u> argued in the alternative, <u>multiple times</u>, that Northstar <u>purchased</u> the cards from Hallmark irrespective of whether the Enterprise Agreement was a "services contract" due to the parties to the contract's actions; that title thereby transferred to Northstar; and that Hallmark therefore sold the cards under the "first sale" doctrine.

Likewise, in its recent memo to this Court, Dickens acknowledged its previous argument that the transfer was not pursuant to the Enterprise Agreement, but that even if it had been pursuant to that Agreement, the transfer was a sale by Hallmark and a purchase by Northstar due to the unequivocal "purchase" language therein (at p.3):

> The parties dispute whether the transfer of the subject greeting cards between Hallmark and Northstar was pursuant to the "Enterprise Agreement." ("Agreement") Yet even if it were, that agreement unequivocally provides that Northstar would "purchase" Hallmark's products - whether for

3

destruction or otherwise - rather than accept them as a "bailment" as the R & R erroneously concludes.

This is the same, alternative argument Dickens made in its papers to Judge Shields, even if in its papers filed with Judge Shields, Dickens emphasized that the transaction was not pursuant to the Enterprise Agreement, whereas in its Objections to the R&R Dickens argues that, even if Judge Shields correctly determined it was, Dickens still prevails.

2. <u>Dickens did not "concede[ ] ... the law in the Second Circuit dictates '[i]f the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.'"</u>

Hallmark argues (at p.12) that Dickens conceded Hallmark must win if there was no first sale:

> In its Opening Brief, Dickens conceded ... the law in the Second Circuit dictates "'[i]f the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.'") (quoting <u>Ryan</u>, 107 F. Supp. 2d at 382). Dickens now backtracks, and argues just the opposite, asserting that even if there is no first sale, the products may still be considered genuine. Obj. at 12.

This characterization of Dickens' position is false. Dickens did not at all concede that if Hallmark did not approve the original sale that the goods cannot be considered genuine as a matter of law and that infringement would therefore be established. The language relied upon by Hallmark references a quotation from the district court's opinion in *Ryan v. Volpone*. Here is the full quote, as included in Dickens' memo:

4

The Second Circuit analyzes the exhaustion, or first sale, doctrine in two steps:

> First, the court must consider whether the trademark owner authorized the first sale of the goods. Second, the court must consider whether the goods were genuine. If the initial sale was authorized, the court must undertake the second part of the analysis and determine whether, as a matter of fact, the goods which were later resold without authorization were genuine. If the goods were genuine, there is no violation of the Lanham Act despite the fact that the goods were resold without the trademark owner's consent. If the goods were not genuine, that is[,] altered or not in keeping with the trademark owner's quality standards, a valid claim for trademark infringement is established. If the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.

*Ryan v. Volpone Stamp. Co.*, 107 F.Supp. 2d 369, 382 (SDNY 2000).

As can be seen, the quote certainly includes the language cited by Hallmark, but Dickens quoted *Ryan* for the express and sole purpose of stating the approved two-part analysis of the first sale doctrine, *viz*, (1) was there a "first sale" and (2) if so were the goods, when thereafter sold, "genuine". Dickens did not discuss, one way or the other, the last sentence of the quote from *Ryan* ("If the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.") because Dickens was addressing only the two-part test for establishing a "first sale", and Dickens' memorandum was in support of Dickens' motion for summary judgment not in opposition to Hallmark's summary judgment motion. However, in Dickens' memo in opposition to Hallmark's summary judgment motion, Dickens explicitly argued a proposition contrary to that which Hallmark says *Ryan* stands for, making clear that Dickens must prevail

5

<u>regardless</u> whether there was a first sale unless Hallmark <u>also</u> shows the cards, as sold by Dickens, were not "genuine":

> A trademark violation under the Lanham Act involving the sale of a trademark holder's actual product requires **not only** that the defendant sells the product without authorization **but also** that it sells the product in an altered form, which renders the product not "genuine." Here, Dickens sold Hallmark cards in pristine form, unaltered and in their original packaging, with no misrepresentations. These facts demonstrate that Hallmark cannot establish a trademark violation. Hallmark's motion fails - and Dickens' motion should prevail- for the additional reason that Hallmark's sale of the Subject Hallmark Greeting Cards to Northstar constituted a "first sale" that extinguished Hallmark's trademark rights in the cards.

Memo in opposition, p.1. (emphasis added). Dickens then argued, on the very next page (among other places) that regardless whether there was first sale, Hallmark cannot prevail unless it also shows that Dickens' sale of the subject cards was likely "to cause confusion, or to cause mistake, or to deceive":

> Hallmark is not entitled to summary judgment with respect to its causes of action for trademark infringement and unfair competition under the Lanham Act because, **regardless of the applicability of the first sale defense**, discussed post, it cannot demonstrate much less has it demonstrated as a matter of law that Dickens' sale of the Subject Hallmark Greeting Cards "is likely to cause confusion, or to cause mistake, or to deceive" as those terms are used in the context of the sale of genuine goods bearing the trademark owner's mark.

Dickens' Memo in Opposition, p.2 (emphasis added).

Thus Hallmark's claim that Dickens conceded the cards cannot be "genuine," and that a trademark violation is established if there was no "first sale," is, simply, false. It is, as well, contrary to Judge Shields' opinion, which Dickens points out at p.10 of its memorandum to this Court:

6

As the R & R recognizes, "the 'unauthorized sale' of trademarked goods, standing alone, is insufficient to support a claim of infringement." R & R at 20, citing *HL. Hayden Co. of New York, Inc. v. Siemens Medical Systems*, Inc., 879 F.2d 1005, 1023 (2d Cir. 1989).

Accordingly, Hallmark mischaracterizes Dickens' positions in at least two material respects, and those arguments therefore should be afforded no weight.[1]

Dated: April 16, 2020

                                              Respectfully submitted,

                                              By: /s/Peter I. Bernstein
                                              Keith A. Weltsch
                                              Peter I. Bernstein
                                              Frank S. DiGiglio
                                              SCULLY, SCOTT, MURPHY & PRESSER
                                              400 Garden City Plaza, Suite 300
                                              Garden City, NY 11530
                                              (5 16) 742-4343
                                              *Attorneys for Defendant Dickens, Inc*

---

[1] Dickens' focus on the foregoing two mischaracterizations of Dickens' arguments by Hallmark should not be construed as conceding any other of Hallmark's arguments of fact and law, many of which Dickens contests.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2020, a copy of the foregoing **REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION** was served upon counsel for Hallmark via ECF.

/s/ Peter I. Bernstein